This is an action in which Vernon W. Butler and his insurer and subrogee, American Insurance Company, seek to recover for damages caused the plaintiff Butler's automobile in a collision with a truck owned by the defendants, a commercial partnership and the individual members thereof, and driven by one of their employees. After trial there was judgment in favor of plaintiff Butler in the sum of $50, and in favor of plaintiff American Insurance Company in the sum of $393.55, from which judgment defendants have appealed.
The accident in question occurred about 6:00 P.M. of June 12, 1947, as both cars were proceeding in a westerly direction on Highway 80. Butler Sons Lumber Company, in which plaintiff Butler has an interest, is located on the north side of said Highway 80 and is reached by a private road intersecting said highway. The collision occurred at the point of the intersection. It is shown that at this point Highway 80 is level and straight for a distance of several hundred yards in each direction. Most of the facts involved have been established without dispute. It appears that as the vehicles involved in the accident, both traveling west, were some 400 yards distant from the intersection above described, the plaintiff Butler, who was driving a Pontiac Sedan at a speed of some 40 to 50 miles per hour, undertook to pass two trucks which were being driven at a speed of 20 to 30 miles per hour. Having completed this operation at a point which was established in the testimony of plaintiff Butler himself as being some 150 to 200 yards from the intersection, Butler swung his automobile into his right-hand lane of the highway, reduced his speed and began his turn into the private road leading to the lumber company, which was his destination. The only substantial conflict in the testimony is with respect to the manner in which Butler completed his passing operation and made his turn. The above statement is based upon his testimony but this is stoutly contradicted by the defendant's driver, who testified that Butler began his swing across the highway and into the lumber company road in one operation without having straightened out in the right lane of the highway.
There were five witnesses who testified as to the actual facts of the collision: the plaintiff Butler and his companion, who was a passenger on the front seat of his car; defendant's driver and a fellow employee riding with him; and the driver of the truck which was following some 2 to 4 car lengths behind defendant's truck. The latter witness did not actually see the collision but his testimony corroborated that of the plaintiff Butler on the fact that Butler had regained the right side of the highway before beginning his turn.
Inasmuch as this concerns a pure question of fact, we have devoted considerable attention to the statement of reasons for judgment as advanced by our learned brother of the district court. The district judge predicated his judgment upon a finding of negligence on the part of defendant's driver, and, if this were the only point. at issue, we would not be disposed to disturb the judgment. But we are convinced that the trial judge failed to give thorough consideration to the question of contributory negligence of a nature and to a degree which precludes recovery in this case.
In reaching this conclusion we have been influenced primarily by the testimony of plaintiff himself, and we quote portions of his testimony as follows:
"A. I was going in a westerly direction on Highway 80. I was traveling at approximately forty to forty-five miles an hour and I passed this Mack truck driven by Mr. Arrington I would say between three and four — I began my attempt to pass between three and four hundred yards from the place.
"Q. From what place? A. From the yard where I made my right turn, where the accident actually happened. Well, I had driven from a hundred and fifty to two hundred yards after completing that pass. Well, as I was making my — I gave a right hand signal, as I made the turn I was looking back in the rear view mirror and saw the truck immediately on me, and I tried to whip off the road and it didn't do any good, I didn't have enough speed, I *Page 637 
had reduced my speed to about five or ten miles an hour."
"Q. Now, Mr, Butler, before overtaking and passing the vehicle driven by John C. Arrington, did you overtake and pass any other vehicle? A. I did.
"Q. What type of vehicle was that? A. It was a truck.
"Q. And about how far was this truck to the rear of the vehicle being driven by Arrington? A. At the time I passed?
"Q. Yes. A. That truck was following the one driven by Mr. Arrington."
"Q. Did you pay any more attention to the Mack truck after you passed it, Mr. Butler? A. I gave the signal, and after giving the signal I looked in my rear view mirror and the truck was immediately on me."
"A. It was during the turn I gave the signal. As a matter of fact that is when I took the signal down is when I saw he was going to hit me and then I tried to put both hands on the steering wheel and whip the car off the road.
"Q. As soon as you looked up in the rear view mirror you realized that the truck was going to hit you if you made a right turn, is that true? A. I had already begun my turn.
"Q. Well, did you begin that turn without knowing where the car was that you had just passed? A. The truck, you mean?
"Q. Yes, sir. A. Did I start to turn —
"Q. Yes, sir; at the time you started your right turn did you have any idea where the following truck was on the highway? A. At the time I started to turn?
"Q. Yes, sir. A. Oh, I gave my right hand signal — no, sir; I didn't not 'till I started to turn, or just immediately you might say prior to starting to turn * * *."
We think the above quotations from the testimony of the plaintiff Butler gave a clear and truthful picture of the incidents leading to the accident. It is evident that Butler passed two trucks, turned in front of them, reduced his speed considerably, and then began his operation of turning to the right off of the road without taking the essential precaution of observing the position of the vehicles which he had reason to know were following almost immediately behind him. Under such circumstances we think his behavior constituted negligence of a nature which contributed to and was a proximate cause of the accident.
Some argument is made on behalf of plaintiff to the effect that defendant's driver turned to the right instead of the left in his attempt to avoid the collision. The argument is predicated upon the proposition that there was no oncoming traffic and a turn to the left would have cleared the Butler vehicle. We think this contention unavailing in view of the fact that defendant's driver was confronted by a sudden emergency. He explained his reaction and his reason for turning to the right on the ground that he was afraid to turn to the left and create a hazard with respect to possible oncoming traffic. In our opinion this explanation evidences sound judgment, but even conceding that under the circumstances it constituted an error of judgment the driver would be exempt from any liability resulting from such error under the well established rule which refuses to penalize an error of judgment resulting from action in response to the creation of a sudden emergency.
For the reasons assigned the judgment appealed from is reversed and set aside, and there is now judgment rejecting plaintiff's demands at their costs. *Page 638